**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

STEPHEN ALEXANDER MILLER,

Plaintiff,

v.

COUNTY OF SAN DIEGO, *et al.*,

Defendants.

Case No. 26-cv-02314-BAS-JLB

**ORDER GRANTING DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS (ECF No. 17)**

Plaintiff Stephen Alexander Miller brings a lawsuit against the County of San Diego, Deputy Shawn Gurren, Teena Pizza, Inc., and Correctional Healthcare Partners, Inc. (together, "Defendants") under several causes of action stemming from Plaintiff's arrest in February 2025.

Presently before the Court is Defendant County of San Diego's (the "County" or "Defendant") motion to dismiss Plaintiff's First Amended Complaint. (ECF No. 17 ("Mot.").) Plaintiff filed an opposition (ECF No. 20 ("Opp'n")), and the County filed a reply (ECF No. 26 ("Reply")). The Court finds the County's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS** the motion.

## I. BACKGROUND

On February 26, 2025, Plaintiff patronized Tony Pepperoni Pizzeria in Vista, California, a restaurant operated by Defendant Teena Pizza, Inc. (ECF No. 3 ("FAC") at 5.) According to the complaint, while he was seated and eating a meal, unspecified nonparties to this action began screaming at Plaintiff to leave and approached him "in an aggressive manner." (*Id.* at 9.) These unnamed individuals physically confronted Plaintiff by tackling and strangling him. (*Id.* at 5.) During the altercation, these individuals forcefully pulled Plaintiff's left arm despite his repeated pleas for them to let go. (*Id.*) Law enforcement eventually arrived, including Defendant Deputy Shawn Gurren. (*Id.*) Upon Deputy Gurren's arrival, Plaintiff explained he had just been attacked and suffered an injury to his left arm. (*Id.*) Despite this explanation and Plaintiff's visible pain, Deputy Gurren arrested Plaintiff. (*Id.* at 5–6.)

Plaintiff was in severe arm and shoulder pain, which he believed to be a dislocated shoulder, at the time of his arrest and subsequent transport to county detention. (*Id.* at 6.) Plaintiff repeatedly complained of this pain to Deputy Gurren, including his belief that his shoulder was dislocated. (*Id.*) Deputy Gurren nevertheless transported Plaintiff to county custody while he was in severe pain. (*Id.*)

After Plaintiff was booked into detention, he remained in severe shoulder pain and showed difficulty in using his left hand. (*Id.* at 6–7.) During this process, a nurse took a brief look at Plaintiff but did not arrange for outside medical attention. (*Id.* at 7.) At some point thereafter, another nurse examined Plaintiff and provided him with over-the-counter medication—again not arranging for outside medical attention. (*Id.*) Plaintiff spent approximately fourteen hours in detention while still suffering from his shoulder injury. (*Id.*) Unspecified individuals "responsible for intake screening, medical screening, custody supervision, and detention care" were aware of Plaintiff's injury but did not take steps to secure prompt treatment. (*Id.*)

Plaintiff was eventually released from custody, with his personal property in tow. (*Id.* at 8.) At that point, Plaintiff was still suffering from his shoulder injury and had not

yet been given "meaningful treatment." (*Id.*) Upon release, Plaintiff "had to make his way while seriously injured before obtaining outside medical care," but did not suffer new or additional injuries. (*Id.*)

During the altercation at the restaurant, Plaintiff was in possession of a silver necklace worth approximately $300 and some prescription glasses. (*Id.* at 9.) Plaintiff alleges video footage shows the necklace was on Plaintiff's person during the incident. (*Id.*) The necklace was not among Plaintiff's personal effects given to him upon leaving the county's custody and absent from his release paperwork. (*Id.*) Though the prescription glasses were left in the restaurant when he was arrested, Plaintiff retrieved them without problem at a later date. (*Id.* at 10.)[1]

Believing his constitutional rights were violated, Plaintiff sued several defendants, including the County, in federal court on April 13, 2026. (ECF No. 1.) Plaintiff amended his complaint as a matter of course on April 23, 2026. (ECF No. 3.) In his FAC, Plaintiff charges the County with three counts under 42 U.S.C. § 1983. The County now moves to dismiss all counts against it for failure to state a claim.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S.

[1] Plaintiff includes new factual allegations in his opposition. (*See generally* Opp'n.) The Court declines to consider any factual allegations outside of the Complaint in its analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))).

662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570). In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

## III. ANALYSIS

Plaintiff asserts three 42 U.S.C. § 1983 claims against the County of San Diego for different alleged violations while he was in its custody. Those claims are all assessed under the framework for municipal liability set out by the Supreme Court in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 941 (S.D. Cal. 2022) ("[A] claim under *Monell* is the only means of asserting a § 1983 claim against a municipality." (collecting authority)).

In *Monell*, the Supreme Court held a municipality may not "be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691 (emphasis in original). Instead, local governments are liable under Section 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury" the plaintiff complains of. *Id.* at 694. Thus, Plaintiff must plead his alleged injury was caused by an official policy or custom of the County.

"A governmental policy is a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citation modified); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Longstanding precedent dictates "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *accord Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) ("Isolated or sporadic incident[s]" are not sufficient bases for *Monell* liability). Whichever route a plaintiff elects to take, the claimed policy, practice, or custom must be the "moving force" behind a violation of the plaintiff's constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). With these principles in mind, the Court next turns to Plaintiff's specific claims against the County.

**A. Counts III, IV & VIII**

Plaintiff asserts Section 1983 claims against the County for denial of adequate medical care during booking and pretrial detention (Count III) and deprivation of property without due process (Count VIII). Count IV is a *Monell* claim[2] for municipal liability based on a number of alleged policies, practices, and/or customs of the County of San Diego.

---

[2] "*Monell* is more properly described as a theory of liability that may support a cognizable claim against" municipalities, as opposed to a separate cause of action. *See Royce-Jesse v. Cnty. of Fresno*, 26-cv-4253-KES-EGC, 2026 WL 2548648, at *5 (E.D. Cal. Aug. 28, 2026) (collecting authority). Considering Plaintiff's *pro se* status, the Court will construe Count IV as asserting a *Monell* theory of liability against the long list of policies, customs, and practices identified in Count IV.

**1. Municipal Liability – *Respondeat Superior***

All counts against the County fail to the extent they attempt to attach liability on the basis of an employer-employee relationship with any alleged tortfeasor. Count III hinges on the actions and omissions of various unnamed parties, such as the two nurses that allegedly provided inadequate treatment to Plaintiff and the various others Plaintiff claims "knew or reasonably should have known" about his injury and need for prompt and adequate treatment. (FAC at 7.) Count VIII similarly hinges on the actions or omissions of either Deputy Gurren or other county employees. (*Id.* at 9–10.) Plaintiff, however, cannot hold the County vicariously liable by merely asserting it employed a given tortfeasor. *See NeSmith v. Cnty. of San Diego*, No. 15-cv-629 JLS (JMA), 2016 WL 4515857, at *4 (S.D. Cal. Jan. 27, 2016) ("Local government units may not . . . be held vicariously liable for the acts of their employees."). Instead, local government entities are liable for actions taken pursuant to official municipal policy or custom. *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011)). Since Plaintiff appears to charge the County with vicarious liability for the actions of its employees, the claims fail because *Monell* expressly proscribes this exact type of *respondeat superior* municipal liability. *See* 436 U.S. at 691. The viability of all counts alleged against the County, therefore, turn on whether Plaintiff is able to plausibly plead his alleged constitutional injuries were inflicted pursuant to official County policy, custom, or practice.

**2. Municipal Liability – Official Policy, Custom, or Practice**

Plaintiff's complaint is bereft of any plausibly alleged County practices or customs constituting a "moving force" behind Plaintiff's claimed constitutional injury. In Count IV, Plaintiff flatly states his claimed "constitutional violations . . . were caused, in whole or in part, by policies, customs, practices, failures to train, failures to supervise, failures to discipline, and/or ratification by Defendant County of San Diego." (FAC at 7.) He states these policies were:

> failing to ensure prompt outside medical evaluation for arrestees and detainees who report serious injury during arrest, transport, booking, or early detention; tolerating inadequate responses by deputies and jail staff to obvious or repeatedly reported injuries; inadequately training, supervising, or disciplining personnel regarding the handling of injured arrestees and pretrial detainees; inadequately training, supervising, or disciplining deputies regarding body-worn camera muting and documentation requirements; and/or ratifying unconstitutional conduct by failing to take adequate corrective action after notice of misconduct.

(*Id.*) Plaintiff then asserts these policies, customs, and practices were a "moving force" behind his constitutional injury. (*Id.*)

Plaintiff's generalized, conclusory allegations do not satisfy his pleading burden. Plaintiff presents a long list of generalized actions or omissions on part of the County, but he provides no further factual detail as to how they became entrenched County policies or customs. Crucially, Plaintiff's FAC is devoid of any other, similar incidents allegedly occurring pursuant to official County policy or custom. It is settled precedent a single incident will not suffice for *Monell* liability. *See Christie*, 176 F.3d at 1235; *Gordon*, 6 F.4th at 974. Rather, a plaintiff must plead a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino*, 99 F.3d at 918 (citation omitted). Plaintiff has, at most, pleaded an isolated incident in his current complaint. Plaintiff pleads a generalized list of practices solely related to his incident with County officials, with at least one practice appearing to be entirely irrelevant.[3] There are no allegations in Plaintiff's FAC even suggesting the practices he challenges are "so permanent and well settled" as to establish a custom with the force of law, *Gordon*, 6 F.4th at 974, or taken pursuant to official County policy, *Pembaur*, 475 U.S. at 483. The total absence of such allegations is fatal to *Monell*-based claims. *See Saved*

---

[3] For example, Plaintiff cites "inadequately training, supervising, or disciplining deputies regarding body-worn camera muting" (FAC at 7) as a policy or custom, but there are no allegations relating to the use of body-worn cameras in his FAC.

*Magazine*, 19 F.4th at 1201 (affirming dismissal of Section 1983 complaint and rejecting theory local government inaction over a single incident can support a finding of city-wide custom); *Burns v. San Diego Cnty. Sheriff's Dep't*, No. 22-cv-372 JLS (MDD), 2022 WL 1570999, at *6 (S.D. Cal. May 18, 2022) ("Proof of a single incident of unconstitutional activity or even a series of isolated or sporadic incidents will not give rise to § 1983 municipal liability." (citation modified) (citing *Grant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 1996))). Plaintiff's laundry list of policies and customs, without more, cannot withstand Rule 12(b)(6) scrutiny.

While the Court liberally construes a pro se litigant's filings, it cannot act as his advocate and supply missing factual allegations or legal theories. *See Mile v. Ryan*, No. CV 12-1064-PHX-JAT, 2013 WL 3335217, at *6 (D. Ariz. July 2, 2013) (citations omitted); *see also Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[F]ederal district judges have no obligation to act as counsel or paralegal to pro se litigants."). For the reasons stated above, the Court **GRANTS** the County's motion to dismiss.[4]

**B. Leave to Amend**

Having granted the motion, the Court now considers whether to grant Plaintiff leave to amend his FAC. The Ninth Circuit has long applied "Rule 15's policy of favoring amendments to pleadings" with "extreme liberality." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation modified). This policy of "extreme liberality" is applied "even more liberally to pro se litigants." *Id.* The County does not appear to request dismissal with prejudice. (*See generally* Mot.) Furthermore, the Court cannot conclude at this juncture whether amendment would be futile. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (amendments are considered futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim").

---

[4] Because the Court finds Plaintiff failed to adequately plead any County policies, customs, or practices, it does not reach the constitutional questions presented.

Thus, Plaintiff will be given leave to amend Counts III, IV, and VIII against the County. Plaintiff is warned, however, that if he does not plead sufficient factual allegations in an amended complaint the Court may not grant leave to amend again. Plaintiff may not add any new parties or claims without leave of Court. If Plaintiff does not file an amended complaint by the deadline provided, the Court will dismiss the claims against the County without further leave to amend and without further notice.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the County's motion to dismiss (ECF No. 17) without prejudice and with leave to amend. If Plaintiff wishes to file a Second Amended Complaint, he must do so no later than **November 4, 2026**.

**IT IS SO ORDERED.**

**DATED: October 14, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**