**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

STEPHEN ALEXANDER MILLER,
Plaintiff,
v.
COUNTY OF SAN DIEGO, *et al.*,
Defendants.

Case No. 26-cv-02314-BAS-JLB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DEPUTY SHAWN GURREN'S MOTION TO DISMISS (ECF No. 19)**

Plaintiff Stephen Alexander Miller brings a lawsuit against the County of San Diego, Deputy Shawn Gurren, Teena Pizza, Inc., and Correctional Healthcare Partners, Inc. (together, "Defendants") under several causes of action stemming from Plaintiff's arrest in February 2025.

Presently before the Court is Defendant Deputy Shawn Gurren's ("Defendant" or "Deputy Gurren") motion to dismiss Plaintiff's First Amended Complaint. (ECF No. 19 ("Mot.").) Plaintiff filed an opposition (ECF No. 21 ("Opp'n")), and Deputy Gurren filed a reply (ECF No. 27 ("Reply")). The Court finds Deputy Gurren's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## I. BACKGROUND

On February 26, 2025, Plaintiff patronized Tony Pepperoni Pizzeria in Vista, California, a restaurant operated by Defendant Teena Pizza, Inc. (ECF No. 3 ("FAC") at 5.) According to the complaint, while he was seated and eating a meal, unspecified nonparties to this action began screaming at Plaintiff to leave and approached him "in an aggressive manner." (*Id.* at 9.) These unnamed individuals physically confronted Plaintiff by tackling and strangling him. (*Id.* at 5.) During the altercation, these individuals forcefully pulled Plaintiff's left arm despite his repeated pleas for them to let go. (*Id.*) Law enforcement eventually arrived, including Defendant Deputy Shawn Gurren. (*Id.*) Upon Deputy Gurren's arrival, Plaintiff explained he had just been attacked and suffered an injury to his left arm. (*Id.*) Despite this explanation and Plaintiff's visible pain, Deputy Gurren arrested Plaintiff. (*Id.* at 5–6.)

Plaintiff was in severe arm and shoulder pain, which he believed to be a dislocated shoulder, at the time of his arrest and subsequent transport to county detention. (*Id.* at 6.) Plaintiff repeatedly complained of this pain to Deputy Gurren, including his belief that his shoulder was dislocated. (*Id.*) Deputy Gurren nevertheless transported Plaintiff to county custody while he was in severe pain. (*Id.*)

After Plaintiff was booked into detention, he remained in severe shoulder pain and showed difficulty in using his left hand. (*Id.* at 6–7.) During this process, a nurse took a brief look at Plaintiff but did not arrange for outside medical attention. (*Id.* at 7.) At some point thereafter, another nurse examined Plaintiff and provided him with over-the-counter medication—again not arranging for outside medical attention. (*Id.*) Plaintiff spent approximately fourteen hours in detention while still suffering from his shoulder injury. (*Id.*) Unspecified individuals "responsible for intake screening, medical screening, custody supervision, and detention care" were aware of Plaintiff's injury but did not take steps to secure prompt treatment. (*Id.*) Deputy Gurren similarly declined to intervene and secure adequate medical treatment for Plaintiff. (*Id.* at 8.)

Plaintiff was eventually released from custody, with his personal property in tow. (*Id.*) At that point, Plaintiff was still suffering from his shoulder injury and had not yet been given "meaningful treatment." (*Id.*) Upon release, Plaintiff "had to make his way while seriously injured before obtaining outside medical care," but did not suffer new or additional injuries. (*Id.*)

During the altercation at the restaurant, Plaintiff was in possession of a silver necklace worth approximately $300 and some prescription glasses. (*Id.* at 9.) Plaintiff alleges video footage shows that the necklace was on Plaintiff's person during the incident. (*Id.*) The necklace was not among Plaintiff's personal effects given to him upon leaving the county's custody and absent from his release paperwork. (*Id.*) Though the prescription glasses were left in the restaurant when he was arrested, Plaintiff retrieved them without problem at a later date. (*Id.* at 10.)[1]

Believing his constitutional rights were violated, Plaintiff sued several defendants, including Deputy Gurren, in federal court on April 13, 2026. (ECF No. 1.) Plaintiff amended his complaint as a matter of course on April 23, 2026. (ECF No. 3.) In his FAC, Plaintiff charges Deputy Gurren with five counts, all under 42 U.S.C. § 1983. Deputy Gurren now moves to dismiss all counts against him.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*

---

[1] Plaintiff includes new factual allegations in his opposition. (*See generally* Opp'n.) The Court declines to consider any factual allegations outside of the Complaint in its analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))).

*v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570). In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

## III. ANALYSIS

### A. Unreasonable Seizure (Count I)

Plaintiff's first count against Deputy Gurren is one for false arrest or unreasonable seizure in violation of the Fourth Amendment. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (citation modified). "It is well-settled that the determination of probable

cause is based upon the totality of the circumstances known to the officers at the time of the search." *See Lacey*, 693 F.3d at 918 (citation modified).

Plaintiff has sufficiently pleaded facts to put Deputy Gurren on notice of the charge against him. Deputy Gurren contends, rather flatly, he had probable cause for Plaintiff's warrantless arrest because Plaintiff was allegedly trespassing on Teena Pizza, Inc.'s property. (Mot. at 3–4.) In so arguing, Deputy Gurren asks the Court to draw an inference against Plaintiff that, because the bartender and other patrons at the restaurant asked Plaintiff to leave, this conclusively establishes the absolute defense of probable cause for trespassing and entitles him to dismissal. (Mot. at 4.) This is improper on a motion to dismiss, as it asks the Court to draw an adverse inference against Plaintiff when there is an equally plausible alternative explanation. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."). The FAC, though somewhat light on details of the incident, explains that (for unknown reasons) several private individuals at the restaurant violently tackled and strangled Plaintiff, injuring his left arm in the process. (FAC at 5.) When Deputy Gurren arrived, Plaintiff informed him he had just been attacked and his left arm was badly injured. (*Id.*) Deputy Gurren arrested Plaintiff without inquiring into the circumstances of the incident and in spite of Plaintiff's visible pain from the injuries inflicted by the violent mob that formed against him at the restaurant. (*Id.* at 5–6.) There are no allegations establishing who called the police and for what—either the allegedly violent mob that hurt Plaintiff, or a purported trespasser on Teena Pizza's property. No facts in the complaint establish what exactly Deputy Gurren was responding to or what he knew before arriving at the restaurant. Without these facts, the pleaded circumstances indicate that Plaintiff was the victim of a violent attack after which he was inexplicably arrested.

These facts, taken as true on a motion to dismiss, indicate that Plaintiff's arrest was without justification. The Court declines Deputy Gurren's invitation to draw an adverse

inference against Plaintiff in light of Plaintiff's plausible, alternative explanation. *See Starr*, 652 F.3d at 1216. Deputy Gurren's explanation requires inferential leaps the Court is not at liberty to take at the pleading stage—namely, that the restaurant's staff called law enforcement to remove Plaintiff for trespassing. (*See* Mot. at 4.) This is improper because it is equally plausible that a third party called law enforcement's attention to a violent group of individuals that attacked a restaurant patron for seemingly no reason. *See Starr*, 652 F.3d at 1216 (holding that where there are two competing plausible explanations "[p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." (emphasis in original)). The Court does not find Deputy Gurren's explanation "so convincing" as to warrant dismissal at this stage without further factual development.

In any event, the existence of probable cause presents questions of fact that are not appropriately decided at the pleading stage of this case. *See Khanna v. City and Cnty. of San Francisco*, No. 25-CV-06965-JCS, 2026 WL 1537047, at *14 (N.D. Cal. June 1, 2026); *see also Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) ("In civil cases, the existence of probable cause is a question for the jury." (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984))). The Court does not have the benefit of a developed factual record to make a proper determination of probable cause or Deputy Gurren's knowledge going into the scene at issue in this case. On the face of the complaint, it appears that Plaintiff's arrest was without justification. Accordingly, the Court **DENIES** Deputy Gurren's motion to dismiss Count I.

**B. Denial of Adequate Medical Care (Count II)**

Plaintiff next asserts that Deputy Gurren failed to secure adequate medical care for him during his arrest and throughout his time in county custody. A pretrial detainee claiming violations of the right to adequate medical care against an individual defendant under the Fourteenth Amendment "must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018)

(citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). The elements of the claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The official's conduct must have been objectively unreasonable—lack of due care is not enough to show a constitutional violation. *See Alexander v. Nguyen*, 78 F.4th 1140, 1145 (9th Cir. 2023) (citation omitted).

Plaintiff's allegations do not survive scrutiny because they fail to plausibly establish objective deliberate indifference. The FAC alleges Deputy Gurren was aware of Plaintiff's arm and shoulder pain but nevertheless transported him while he was in pain. (FAC at 6.) The FAC claims Deputy Gurren's actions were "objectively unreasonable" but does not provide factual detail to support that threadbare legal conclusion. (*Id.*) In Plaintiff's own recounting of the facts, he states two medical professionals examined him during booking and detention. (*Id.* at 7.) The second medical professional who examined Plaintiff provided him with two sets of over-the-counter drugs for pain. (*Id.*) There are no allegations claiming Deputy Gurren blocked this care, or what his involvement was in medical care at all beyond transporting Plaintiff to county detention, where he did in fact receive medical care. Plaintiff simply appears to disagree with the medical care he received while in county custody. At most, the FAC pleads an inadvertent lack of adequate medical care that is not cognizable under the law. *See Alexander*, 78 F.4th at 1145; *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (observing in the Eighth Amendment context that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain'" sufficient establish deliberate indifference); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to deliberate

indifference to [plaintiff's] serious medical needs.") (collecting authority); *Baqleh v. Lake Cnty. Sheriff's Dep't*, No. 25-cv-10377-RFL, 2026 WL 974504, at *1 (N.D. Cal. Apr. 10, 2026) (dismissing deliberate indifference claim under the Fourteenth Amendment where factual allegations amounted to mere "disagreement over appropriate medical treatment" which does not "plausibly constitute deliberate indifference" (citation omitted)).

The FAC faults Deputy Gurren for not securing adequate medical attention for Plaintiff. Plaintiff did receive medical care after he was arrested, just not the care he precisely wanted. The FAC is largely devoid of allegations surrounding Deputy Gurren's involvement in Plaintiff's medical care. Those conclusory allegations do not rise to the level of objective deliberate indifference and instead—at most—suggest negligence or noncompliance with Plaintiff's preferred treatment method (one he does not identify). That is insufficient.[2] Accordingly, the Court **GRANTS** Deputy Gurren's motion to dismiss Count II.

**C. Failure to Intervene (Count V)**

Plaintiff asserts Deputy Gurren failed to intervene and "allowed Plaintiff to be processed, booked, and left without prompt and adequate treatment despite the obvious risk of ongoing harm." (FAC at 8.) His claim appears to refer to the failure to intercede doctrine wherein "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen" and can be held liable "if they had an opportunity to intercede." *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th. Cir. 2000); (Opp'n at 13 (citing *Gates*, 229 F.3d at 1289).)

---

[2] It is also unclear to the Court whether Plaintiff pleads the existence of a "serious medical need." "The fact that Plaintiff's medical providers did not find Plaintiff's injuries worthy of treatment beyond prescribing an over-the-counter pain killer indicates that his injury was not a 'serious medical need.'" *James v. Lee*, 485 F. Supp. 3d 1241, 1264 (S.D. Cal. 2020); *see also Gonzalez v. Guzman*, No. 17-cv-241-GPC-BGS, 2017 WL 5446087, at *3–4 (S.D. Cal. Nov. 14, 2017) ("[T]he fact that [a nurse] did not find Plaintiff's injuries worthy of any follow-up treatment and did not immediately refer Plaintiff to his [primary care physician] weighs in favor of finding that his injuries were not a 'serious medical need.'"). Similarly here, Plaintiff's treatment by two nurses, one of whom simply prescribed Tylenol to him (FAC at 7), seems to indicate the absence of a "serious medical need."

Plaintiff's claim fails because the failure to intercede doctrine does not extend to medical care claims. "Indeed, 'the vast majority of cases' discussing failure to intercede 'involve an officer's failure to intercede when fellow officers are employing unlawful force[.]'" *See Estate of Pinacho v. Cnty. of Los Angeles*, No. 26-cv-03431-AH-KESx, 2026 WL 2373324, at *6 (C.D. Cal. July 9, 2026) (quoting *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1093 (C.D. Cal. 2011)). Plaintiff does not cite any cases indicating the doctrine extends to claims for denial of medical care and instead solely relies on *Cunningham*. (*See* Opp'n at 13.) Even if this cause of action were available to Plaintiff, his allegations are too conclusory for Count V to be a viable claim. He does not allege how Deputy Gurren had an opportunity to intervene beyond the mere conclusion that he "had a realistic opportunity to intervene." (FAC at 8.) Considering the apparent unavailability of this claim as a matter of law, the Court **GRANTS** Deputy Gurren's motion to dismiss Count V **WITH PREJUDICE**.

**D. State-Created Danger (Count VI)**

In general, "members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney v. Winnebago Cnty., Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). An exception to that general rule applies where public employees "affirmatively place the plaintiff in a position of danger, that is, where their actions create or expose an individual to a danger which he . . . would not have otherwise faced." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (citation modified). "The affirmative act must create an actual, particularized danger, and the ultimate injury to the plaintiff[] must be foreseeable." *Id.* (citations omitted). The public employee must have acted with "deliberate indifference" to a "known or obvious danger." *Id.* (citation omitted).

Plaintiff's state-created danger claim[3] fails because he does not adequately plead an actual, particularized danger. Plaintiff alleges Deputy Gurren released Plaintiff "while Plaintiff was still seriously injured, without arranging prompt medical transport, meaningful treatment, or a reasonably safe release under the circumstances." (FAC at 8.) Plaintiff was released with his personal valuables and thereafter "had to make his way while seriously injured before obtaining outside medical care." (*Id.*) Plaintiff then asserts Deputy Gurren "affirmatively placed Plaintiff in a more dangerous position and exposed Plaintiff to a foreseeable risk of further harm," resulting in "worsened" pain and delay in treatment. (*Id.*) These bare allegations are insufficient to survive dismissal. As pleaded, the FAC takes issue with being released from custody and being exposed to the generalized risk of further injury. Plaintiff does not plead an actual, additional injury beyond the conclusory statement that his pain "worsened." Plaintiff is in a position to provide additional information, considering he admitted to "obtaining outside medical care" after being released. (*Id.*) As stated, the FAC's generalized risk of injury is insufficient to survive a Rule 12 challenge and dooms the claim from the outset. *See Hernandez*, 897 F.3d at 1133 (requiring a public employee's affirmative actions to "create an actual, particularized danger").

The claim separately fails because Plaintiff has not adequately established deliberate indifference. Deputy Gurren released Plaintiff from custody after he was medically evaluated by two different professionals. (FAC at 7–8.) These allegations, examined in a light most favorable to Plaintiff, do not sufficiently establish deliberate indifference to known or obvious dangers. *See Hernandez*, 897 F.3d at 1133. Accordingly, the Court **GRANTS** Deputy Gurren's motion to dismiss Count VI.

---

[3] Plaintiff styles Count VI as a "State-Created Danger/Substantive Due Process" claim, though the claim is largely conclusory and threadbare as to substantive due process. The claim appears trained on state-created danger, which the Court analyzes in full herein. The Court finds that there are insufficient allegations in Count VI to plausibly state a substantive due process claim. Those threadbare allegations do not "shock the contemporary conscience" sufficiently to survive dismissal on a Rule 12(b)(6) challenge for the reasons stated in this section. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).

**E. Deprivation of Property (Count VIII)**

Plaintiff's final count accuses Deputy Gurren of deprivation of property without due process. Specifically, Plaintiff claims he was wearing a silver necklace worth approximately $300 at the time of the incident and, at some point after he was released, he realized the necklace was missing. (FAC at 9.) The claim fails because it pleads no facts regarding Deputy Gurren's purported involvement in Plaintiff's loss of the necklace. The FAC only pleads the necklace was visible on Plaintiff's person in video footage of the altercation at the restaurant and, at some point thereafter, he realized it was missing. (*Id.* at 9–10.) Plaintiff does not allege anything with respect to Deputy Gurren's actions or omissions. Plaintiff merely states "Defendants failed to properly account for and safeguard Plaintiff's property during and after the arrest process." (*Id.* at 10.) The Court finds these threadbare allegations fail to raise a reasonable inference Deputy Gurren was involved in any wrongdoing with respect to the necklace.[4] Accordingly, the Court **GRANTS** the motion to dismiss Count VIII.

**F. Qualified Immunity**

Deputy Gurren contends he is entitled to qualified immunity for all claims asserted against him. (Mot. at 7–10.) Having granted his motion on all claims except for Count I, the Court considers qualified immunity as to Count I only. Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "An officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood

[4] Plaintiff also includes the loss of a pair of prescription glasses in Count VIII. Since Plaintiff admits he later recovered these prescription glasses, seemingly with no issue (FAC at 10), the Court also grants the motion with respect to the glasses.

[his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citations omitted).

Deputy Gurren's argument for qualified immunity rests on fact-intensive determinations inappropriate for resolution at the pleading stage. "The Ninth Circuit has emphasized that qualified immunity is a fact specific analysis that is not generally resolved in a motion to dismiss." *See Tellez v. Cnty. of Riverside*, No. 23-cv-00755-WLH-SHK, 2023 WL 10406709, at *10 (C.D. Cal. Sept. 12, 2023) (citing *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (observing that "[d]etermining claims of qualified immunity at the motion to dismiss stage raises special problems for legal decision making")). Accepting the factual allegations in Plaintiff's FAC as true and drawing all reasonable inferences from those allegations in his favor, Plaintiff has stated a plausible claim for unreasonable seizure without probable cause in violation of the Fourth Amendment. *See supra* Section III(A).

That finding does not end the qualified immunity inquiry. "It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). However, even an officer who makes an arrest without probable cause is still entitled to qualified immunity "if he reasonably *believed* there to have been probable cause." *Id.* (emphasis in original) (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)). The Court does not have the benefit of a developed factual record, which would include Deputy Gurren's knowledge and reasonable beliefs at the time of Plaintiff's arrest, sufficient to make a determination of qualified immunity as a matter of law at this early juncture. Thus, the Court finds it premature[5] to conduct a fact-intensive determination of probable cause,

[5] *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (affirming denial of motion to dismiss based on qualified immunity and observing that courts "are not equipped at this stage to determine whether qualified immunity will ultimately protect [defendant]. Those issues must be resolved at summary judgment or at trial"). District courts in California have declined to analyze qualified immunity claims at the motion to dismiss stage, finding it premature when no factual record has been developed. *See Shelton v. Ekchian*, No. 23-cv-10427-CBM-SSCZ, 2024 WL 5717969, at *9 (C.D. Cal. Nov. 15, 2024) (declining to address qualified immunity at the motion to dismiss stage without prejudice to raising it later at

or Deputy Gurren's reasonable belief of probable cause, at this stage of the proceedings. Accordingly, the Court **DENIES** Deputy Gurren's motion based on qualified immunity without prejudice to raising it at a later stage in this litigation.

**G. Leave to Amend**

Having largely granted the motion, the Court now considers whether to grant Plaintiff leave to amend his FAC. The Ninth Circuit has long applied "Rule 15's policy of favoring amendments to pleadings" with "extreme liberality." *See Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation modified). This policy of "extreme liberality" is applied "even more liberally to pro se litigants." *Id.* Deputy Gurren does not appear to request dismissal with prejudice. (*See generally* Mot.) Further, the Court cannot conclude at this juncture whether amendment would be futile. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (amendments are considered futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim").

Thus, Plaintiff will be given leave to amend his complaint against Deputy Gurren except for Count V. Plaintiff is warned, however, that if he does not plead sufficient factual allegations in any amended complaint, the Court may not grant leave to amend again. Plaintiff may not add any new parties or claims without leave of Court. If Plaintiff does not file an amended complaint by the deadline provided, the Court will dismiss the claims against Deputy Gurren without further leave to amend and without further notice.

---

summary judgment); *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 396 (N.D. Cal. 2021) (holding "[w]hile defendant[] may ultimately prevail on many of the arguments [he] makes now with respect to qualified immunity, because the qualified immunity analysis often turns on the specific facts of each alleged violation, the court finds that the qualified immunity arguments are better suited to summary judgment"); *Chavez v. Wynar*, 421 F. Supp. 3d 891, 909 (N.D. Cal. 2019) (denying motion to dismiss on qualified immunity grounds because "it is premature at this juncture to decide whether qualified immunity applies because the factual record has not been developed"); *Garcia v. Cnty. of Riverside*, No. CV 18-00839 SJO (ASx), 2019 WL 1002522, at *5 (C.D. Cal. Jan. 11, 2019) (holding that "making a ruling on qualified immunity would be premature" at the motion to dismiss stage).

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Deputy Gurren's motion to dismiss (ECF No. 19). The Court orders as follows:

(1) Deputy Gurren's motion with respect to Count I is **DENIED**.

(2) Deputy Gurren's motion with respect to Counts II, VI, and VIII is **GRANTED WITHOUT PREJUDICE**. Plaintiff is given leave to amend these claims.

(3) Deputy Gurren's motion with respect to Count V is **GRANTED WITH PREJUDICE**. Plaintiff is denied leave to amend this claim.

(4) If Plaintiff wishes to file a Second Amended Complaint consistent with the Court's leave to amend, he must do so no later than **November 4, 2026**. If Plaintiff does not elect to file a Second Amended Complaint, Deputy Gurren is **ORDERED** to file a responsive pleading no later than **November 12, 2026**.

**IT IS SO ORDERED.**

**DATED: October 14, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**