**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN ALEXANDER MILLER,<br>Plaintiff,<br>v.<br>COUNTY OF SAN DIEGO, *et al.*,<br>Defendants. | Case No. 26-cv-02314-BAS-JLB<br><br>**ORDER GRANTING DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 23)** |

Plaintiff Stephen Alexander Miller brings a lawsuit against the County of San Diego, Deputy Shawn Gurren, Teena Pizza, Inc., and Correctional Healthcare Partners, Inc. (together, "Defendants") under several causes of action stemming from Plaintiff's arrest in February 2025.

Presently before the Court is Defendant Correctional Healthcare Partners, Inc.'s ("CHP" or "Defendant") motion for judgment on the pleadings. (ECF No. 23 ("Mot.").) Plaintiff filed an opposition (ECF No. 28 ("Opp'n")), and CHP filed a reply (ECF No. 31 ("Reply")). The Court finds CHP's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS** the motion.

## I. BACKGROUND

On February 26, 2025, Plaintiff patronized Tony Pepperoni Pizzeria in Vista, California, a restaurant operated by Defendant Teena Pizza, Inc. (ECF No. 3 ("FAC") at 5.) According to the complaint, while he was seated and eating a meal, unspecified nonparties to this action began screaming at Plaintiff to leave and approached him "in an aggressive manner." (*Id.* at 9.) These unnamed individuals physically confronted Plaintiff by tackling and strangling him for no apparent reason. (*Id.* at 5.) During the altercation, these individuals forcefully pulled Plaintiff's left arm despite his repeated pleas for them to let go. (*Id.*) Law enforcement eventually arrived, including Defendant Deputy Shawn Gurren. (*Id.*) Upon Deputy Gurren's arrival, Plaintiff explained he had just been attacked and suffered an injury to his left arm. (*Id.*) Despite this explanation and Plaintiff's visible pain, Deputy Gurren arrested Plaintiff. (*Id.* at 5–6.)

Plaintiff was in severe arm and shoulder pain, which he believed to stem from a dislocated shoulder, at the time of his arrest and subsequent transport to county detention. (*Id.* at 6.) Plaintiff repeatedly complained of this pain to Deputy Gurren, including his belief that his shoulder was dislocated. (*Id.*) Deputy Gurren nevertheless transported Plaintiff while he was in severe pain. (*Id.*)

After Plaintiff was booked into detention, he remained in severe pain and showed difficulty using his left hand. (*Id.* at 6–7.) During this process, a nurse took a brief look at Plaintiff but did not arrange for outside medical attention. (*Id.* at 7.) At some point thereafter, another nurse examined Plaintiff and provided him with over-the-counter medication—again not arranging for outside medical attention. (*Id.*) Plaintiff spent approximately fourteen hours in detention while still suffering from his shoulder injury. (*Id.*) Unspecified individuals "responsible for intake screening, medical screening, custody supervision, and detention care" were aware of Plaintiff's injury but did not take steps to secure prompt treatment. (*Id.*)

Plaintiff was eventually released from custody, with his personal property in tow. (*Id.* at 8.) At that point, Plaintiff was still suffering from his shoulder injury and had not

yet been given "meaningful treatment." (*Id.*) Upon release, Plaintiff "had to make his way while seriously injured before obtaining outside medical care," but did not suffer new or additional injuries. (*Id.*)[1]

Believing his constitutional rights were violated, Plaintiff sued several defendants, including CHP, in federal court on April 13, 2026. (ECF No. 1.) Plaintiff amended his complaint as a matter of course on April 23, 2026. (ECF No. 3.) CHP answered Plaintiff's First Amended Complaint on May 19, 2026. (ECF No. 8.) With the pleadings closed, CHP now brings a motion for judgment on the pleadings as to the sole count Plaintiff presses against it. (ECF No. 23.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation modified). "When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6)." *Landmark Am. Ins. Co. v. Navigators Ins. Co.*, 354 F. Supp. 3d 1078, 1081 (N.D. Cal. 2018) (citation omitted).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency" of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v.*

[1] Plaintiff includes new factual allegations in his opposition. (*See generally* Opp'n.) The Court declines to consider any factual allegations outside of the Complaint in its analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))).

*Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

## III. ANALYSIS

### A. Claim Under 42. U.S.C. § 1983 (Count III)

The sole claim Plaintiff brings against CHP is Count III, a 42 U.S.C. § 1983 claim for denial of adequate medical care during booking and pretrial detention. (FAC at 6–7.) To make out a Section 1983 claim against a private entity like CHP, Plaintiff must show: (1) CHP acted under color of state law; and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of CHP. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008)). The Court addresses each requirement in turn.

#### 1. Whether CHP Acted Under Color of State Law

Private citizens and corporations generally cannot be held liable under Section 1983 because they do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991). The Supreme Court recognizes an exception to this principle where the private entity conspires with a state actor or is jointly engaged with a state actor when

undertaking a prohibited action. *Tower v. Glover*, 467 U.S. 914, 920 (1984). CHP appears to concede it is a private entity acting under color of state law. (*See* Mot. at 5.) The Court therefore concludes CHP acted at the relevant times under color of state law and proceeds to analyze the second element.

**2. Whether the Alleged Violations Were Caused by Official CHP Practices, Policies, or Customs**

In *Tsao*, the Ninth Circuit held as a matter of first impression that the *Monell* standard of municipal liability applied with no distinction to private entities acting under color of state law like CHP. *See* 698 F.3d at 1139 ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law."). *Monell* holds a municipality may not "be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Instead, an entity is liable under Section 1983 where "execution of [an entity's] policy or custom . . . inflicts the injury" the plaintiff complains of. *See id.* at 694. Thus, Plaintiff must plead his alleged constitutional injury was "caused by an official policy or custom of" CHP. *Tsao*, 698 F.3d at 1139.

"A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1143 (citation modified). Unconstitutional policies "need not be formal or written to create municipal liability under Section 1983; however, they must be so permanent and well settled as to constitute a custom or usage with the force of law." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citation modified). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Longstanding precedent dictates "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the

conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *accord Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) ("Isolated or sporadic incident[s]" are not sufficient bases for *Monell* liability). Whichever route a plaintiff elects to take, the claimed policy, practice, or custom must be the "moving force" behind a violation of a plaintiff's constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiff's complaint is devoid of any alleged practices or customs followed by CHP constituting a "moving force" behind Plaintiff's claimed constitutional injury. Plaintiff's sole claim against CHP alleges two nurses did not arrange for proper medical treatment of his shoulder injury. (FAC at 6–7.) He also generally alleges "Defendants responsible for intake screening, medical screening, custody supervision, and detention care" knew or should have known Plaintiff needed prompt and adequate medical care but failed to secure such care for him. (*Id.* at 7.) It is unclear from Plaintiff's allegations whether CHP or the County of San Diego employed any of the unnamed individuals allegedly involved in Count III. Even if these unnamed individuals were indeed CHP employees, the law does not hold Section 1983 defendants vicariously liable based solely on the existence of an employer-employee relationship with a tortfeasor. *Tsao*, 698 F.3d at 1139 (citing *Monell*, 436 U.S. at 691). More importantly, the total absence of any allegations as to CHP's practices or customs is fatal to Plaintiff's claim against CHP.

Analyzing the policy allegations appearing in Count IV (alleged solely against the County of San Diego) does not save Plaintiff's claim against CHP. The Court finds these allegations are scant, and do not identify any CHP-specific policy or custom. (FAC at 7.) The only reference hinting at the requisite elements of a Section 1983 claim comes from Plaintiff's opposition, where he states he needs discovery to determine "[w]hether CHP maintained policies, customs, or practices that delayed or denied outside hospital treatment." (Opp'n at 5.) This is improper for at least two reasons. First, even a pro se plaintiff "may not amend [his] complaint by way of a brief in opposition to a motion to dismiss." *Schramm v. Montage Health*, No. 17-CV-02757-HRL, 2018 WL 1156894, at *3

(N.D. Cal. Mar. 5, 2018); *see also Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) (observing that the face of a plaintiff's complaint "control[s] the Rule 12(b)(6) inquiry"). Second, and most crucially, the isolated incident pleaded in the FAC cannot form the basis of *Monell* liability. *Saved Magazine*, 19 F.4th at 1201. While the Court liberally construes a pro se litigant's filings, it cannot act as his advocate and supply missing factual allegations or legal theories. *See Mile v. Ryan*, No. CV 12-1064-PHX-JAT, 2013 WL 3335217, at *6 (D. Ariz. July 2, 2013) (citations omitted); *see also Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[F]ederal district judges have no obligation to act as counsel or paralegal to pro se litigants"). For the reasons stated above, the Court **GRANTS** the motion for judgment on the pleadings as to Count III against CHP.[2]

**B. Leave to Amend**

Having granted the motion, the Court now considers whether to grant Plaintiff leave to amend his FAC. CHP contends leave to amend should be denied as futile. An amendment is considered futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). CHP's futility argument rests on the fact that Plaintiff's currently pleaded theory of liability against it in Count III is based on the conduct of individuals potentially employed by CHP, a *respondeat superior* style of liability *Monell* expressly held insufficient for Section 1983 claims. 436 U.S. at 691. The Court does not disagree with this general principle of law. However, it does not automatically follow there are "no set of facts" Plaintiff could plead against CHP that would allow Count III to survive a Rule 12 challenge. *See Miller*, 845 F.2d at 214. The Court is unwilling to make the inferential leap CHP asks it to take at this stage and will decline to grant the motion without leave to amend.

Plaintiff will therefore be given leave to amend Count III against CHP. Plaintiff is warned, however, that if he does not plead sufficient factual allegations in any amended

---

[2] Because the Court finds Plaintiff failed to adequately plead any CHP policies, customs, or practices, it does not reach the constitutional question presented.

Count III, the Court may not grant leave to amend again. Plaintiff may not add any new parties or claims without leave of Court. If Plaintiff does not file an amended complaint by the deadline provided, the Court will dismiss the claims against CHP without further leave to amend and without further notice.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** CHP's motion for judgment on the pleadings (ECF No. 23) without prejudice and with leave to amend. If Plaintiff wishes to file a Second Amended Complaint, he must do so no later than **November 4, 2026**.

**IT IS SO ORDERED.**

**DATED: October 14, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**